In the matter of the estate of MURRAY WHITING FERRIS, deceased.

[Decided June 27th, 1923.]

Corporate stock transferred to another in which voting power was retained by the transferer for a specified time, constituted an interest only of the transferer in the stock which was liable to inheritance tax, the ownership being in the transferee.

---

BUCHANAN, VICE-ORDINARY.

The executors of the estate of Murray Whiting Ferris, deceased, appeal from the comptroller's assessment and levy of transfer inheritance tax, contending that the comptroller erred—(1) in appraising at an excessive valuation one thousand shares of the preferred stock of the Ferris Company; and (2) in including in the appraisal of the decedent's estate two hundred and twenty shares of the common stock of the

*94 N. J. Eq.*                    In re Ferris.

same company, which said last named shares appellants contend were not the property of decedent, but were the property of one John J. Magovern.

As to the first issue, it is sufficient to say there is nothing in the record which would justify this court in determining that the comptroller erred in his appraisal of the one thousand shares of preferred stock. This, indeed, was tacitly admitted by appellants on the argument.

As to the second issue, the two hundred and twenty shares of common stock in question had been the subject of a contract between Magovern and decedent some years prior to the latter's death. The terms of that contract were evidenced by a written agreement executed some time subsequent to the making of the actual contract. It is contended, on behalf of the state, that the result of this contract was that the ownership of the shares of stock in question remained in Mr. Ferris, with a transfer thereof to Magovern, to take effect at the death of Ferris.

It is clear to my mind that such was not the situation in fact, at least as to the entire beneficial ownership of the shares of stock. By the transaction in question, a then present transfer of the beneficial ownership, or equitable ownership, of these shares, from Ferris to Magovern, was effectuated, except that Ferris retained the right to vote the shares of stock in question (and to that end the right to have the shares remain of record in his own name on the books of the company), during his own lifetime, or so long as it should be necessary for Ferris to retain control of the two hundred and twenty shares to enable him to maintain his majority vote in the company. There is a further provision in the contract, that if Magovern should die during the period that Ferris was to retain the voting power on the stock, then all of Magovern's interest and ownership in the stock should terminate and cease. During this period so provided Magovern was entitled to all the dividends, but Ferris was entitled to the voting power.

Under the circumstances, therefore, Magovern owned an interest in this stock. He owned the stock, less the interest

which Ferris had, viz., the retention of the voting power, and also subject to a contingent defeasance, if he, Magovern, should predecease Ferris.

The comptroller erred, therefore, in appraising a tax on the Ferris estate in respect of the complete ownership of the stock in question.

The tax should have been assessed only in respect of that which Ferris owned and which was to be transferred to Magovern at Ferris' death, viz., the voting power on the stock.

The record will be remitted to the comptroller to the end that correction be made in this behalf.